IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-03045-LTB

JENNIFER HUDDLESTON,

      Plaintiff,

v.

GARY WILSON, in his individual and official capacities,
DANA LINCOLN, in her individual and official capacities

      Defendants.

_____

## ORDER

_____

      This case is before me on: (1) Plaintiff Jennifer Huddleston's Opposed Motion to Amend

Complaint [Doc. # 20]; (2) Defendants' Response [Doc. # 22]; (3) Plaintiff's Reply [Doc. # 24];

(4) Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P.

12(b)(6) [Doc. # 15]; and (5) Plaintiff's Response [Doc. # 19].  Plaintiff is seeking to amend the

First Amended Complaint and Jury Demand [Doc #5].  After Plaintiff had filed her First

Amended Complaint and Jury Demand [Doc #5], Defendants filed a Motion to Dismiss

Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc #15].  Plaintiff then

filed a motion seeking to amend her First Amended Complaint. [Doc. # 20].  After consideration

of all motions, related pleadings, and the case file, I deny Plaintiff's Opposed Motion to Amend

Complaint and grant Defendants' motion to dismiss.

## I. Background

The background facts of the case are presented as they appear in Plaintiff's First Amended Complaint and Jury Demand (Doc. # 5) unless otherwise noted.  Because I am addressing Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the well-pleaded facts alleged in Plaintiff's complaint are assumed to be true.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009).

This action arises out of an incident that occurred at the Denver Detention Center ("DDC") on November 20, 2010.  Plaintiff alleges deliberate indifference to her serious medical needs in violation of the Eighth and Fourteenth Amendments, and alleges a state-created danger with respect to her attempted suicide in violation of the Fourteenth Amendment.  On November 19, 2012, Plaintiff filed her original Complaint.  [Doc. # 5].  The original Complaint named as Defendants Officer Gary Wilson, and one unknown Deputy Sheriff.  After filing her original Complaint, Plaintiff learned that the unknown deputy sheriff was Dana Lincoln, a Deputy Sheriff at the DDC.  Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff filed an amended complaint on November 30, 2012, replacing unknown Deputy Sheriff Jane Doe with Defendant Dana Lincoln ("Defendant Lincoln").  [*Id.*]

According to Plaintiff, she was transferred from the Jefferson County Jail to the DDC on November 20, 2010, and placed in the DDC's "jail clinic/medical unit."  [*Id*. at ¶ 15].  While there, Plaintiff alleges that Defendant Lincoln gave her a razor blade which she then used to attempt suicide.  [*Id*. at ¶ 19].  Plaintiff alleges that Defendants were deliberately indifferent to her serious medical needs "when they handed [Plaintiff] a razor blade."  [*Id*. at ¶ 29].  Plaintiff seeks both equitable and monetary damages and asserts that jurisdiction is proper pursuant to 28

U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.  [*Id*. at ¶ 5].

With respect to Defendant Lincoln, Plaintiff alleges that Defendant Lincoln's "intentional act . . . amounts to deliberate indifference and willful and wanton disregard"of a substantial risk to Plaintiff." [*Id*. at ¶ 28].  Plaintiff contends that this "deliberate indifference . . . was the proximate cause of [Plaintiff's] injuries." [*Id*. at ¶ 30].  According to Plaintiff, she had a long history of mental health problems "including a significant history of suicidal ideation and suicide attempts." [*Id*. at 22].  With respect to Defendant Gary Wilson ("Defendant Wilson"), Plaintiff provides that he was acting under color of state law as the Director of Corrections.  [*Id.* at ¶ 9].

On February 22, 2013 Defendants filed a motion to dismiss.  [Doc. # 15].  They contend that the claims against Defendant Lincoln are barred by the statute of limitations, and that Plaintiff fails to state a claim against Defendant Wilson in both his individual and official capacities.  Plaintiff's response asks me to deny Defendants' motion to dismiss and simultaneously requests leave to file a second amended complaint.  [Doc. # 19].  Plaintiff contemporaneously filed an Opposed Motion to Amend the Complaint and provided a Second Amended Complaint.  [Doc. #s 20 & 20-1].

## II.  Standards of Review

### A.     Fed. R. Civ. P. 15

Rule 15 governs amendments to pleadings generally.  *See* Fed. R. Civ. P. 15.  "Except when an amendment is pleaded 'as a matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)).  The Rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its

merits rather than on procedural niceties." *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted).  Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Defendants contend that Plaintiff's motion to amend her First Amended Complaint is futile because it would be subject to dismissal.  Whether to grant leave to amend the pleadings pursuant to Rule 15(a)(2) is within the trial court's discretion.  *See Minter*, 451 F.3d at 1204 (*citing Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Although Rule 15(a) provides that leave to amend shall be freely given, "the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Moody's Investor's Servs.*, 175 F.3d at 859); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding that dismissal with prejudice is "appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

Thus, here I will consider whether the Plaintiff's allegations would plausibly establish a claim to determine whether amendment would be futile. Additionally, I only address the futility of amendment in relation to Defendant Wilson because all of Plaintiff's proposed additions relate only to Defendant Wilson.

4

## B.     Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "Plausibility" in this context "refer[s] to the scope of allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). As a corollary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 at U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. When deciding a motion to dismiss under Rule12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 556 U.S. at 678.

## III.  Discussion

## A.     Defendant Gary Wilson

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The statute does not create any substantive civil rights; rather it creates only a remedy for violations of rights secured by the federal statutory and constitutional law. *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995). "In order to successfully state a cause of action under section 1983, [Plaintiff] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *S. Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted). However, a claim against an individual officer for an alleged constitutional violation does not automatically result in liability for the officer's supervisors or the government entity for which the officer works. *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (explaining that there is no *respondeat superior* liability under § 1983, only liability based on personal involvement in the alleged constitutional violation) (citation omitted).

Plaintiff is suing Defendant Wilson in his individual and official capacity.

## 1.    Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010). That is "[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly

established at the time of the defendant's conduct." *Id.* The Supreme Court has held that courts may consider either step of the process first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 2.      Individual Capacity

In applying the two-part qualified immunity test discussed above, I first address the question of whether Plaintiff has adequately alleged that Defendant Wilson violated Plaintiff's federally protected rights. In doing so, I "consider[] whether the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" cognizable under § 1983. *Poolaw v. Mercantel*, 565 F.3d 721, 728 (10th Cir. 2009).

Although "neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners[, t]hey are . . . responsible for taking reasonable measures to [e]nsure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (internal citation omitted). Accordingly, a jailer violates the Eighth Amendment if he shows deliberate indifference to a convicted inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

Claims arising from a failure to prevent prisoner suicide or attempted suicide "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand Cnty.*, 119 F.3d 862, 866 (10th Cir. 1997). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Gamble,* 429 U.S. at

103, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Thus, a plaintiff bringing such a claim must prove that his jailer was "deliberately indifferent" to a substantial risk of suicide." *Barrie v. Grand Cnty.*, 119 F.3d at 869 (internal quotation marks omitted).

As an initial matter, facts speaking to a defendant's personal participation are required. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation").  To establish § 1983 liability in an individual capacity, "'the plaintiff must establish a deliberate, intentional act' on the part of the defendant 'to violate [the plaintiff's legal] rights.'" *Parro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (*quoting Serna v. Colo. Dep't of Corr.*, 455, F.3d 1146, 1151 (10th Cir. 2006)).

Once personal participation is established, the test for deliberate indifference "has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  Under the objective component Plaintiff must establish that she was deprived of a medical need that is, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834.  "Obviously [attempted] suicide satisfies this requirement." *Gaston v. Ploeger*, 229 Fed. Appx. 702 (10th Cir. 2007) (unpublished); *see also Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) ("[I]t goes without saying that suicide is a serious harm.") (quotations omitted).  The subjective component of the test requires a showing that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 836 (explaining that the required *mens rea* lies "somewhere between the

8

poles of negligence at one end and purpose or knowledge at the other.") "[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### a. Personal Participation

Because personal participation is an essential element, Plaintiff must show that each named Defendant personally caused the deprivation of a federal right. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates. *Serna*, 455 F.3d at 1151 ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Fogarty*, 523 F.3d at 1162.

However, a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of*

9

*Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission.  *Id.* (*citing Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).

Under the second situation liability can be imposed upon a "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy, the enforcement (by the defendant-supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied,* 131 S.Ct. 2150 (2011).  When an official is sued under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must demonstrate not only that a subordinate employee violated her rights but that the supervising official "by virtue of his own conduct and state of mind did so as well."  *Id.* at 1197 (*citing Iqbal*, 556 U.S. at 662.   The state of mind required for supervisory liability is the same as that for the underlying constitutional offense.  *Porro*, 624 F.3d at 1328 ; *Dodds*, 614 F.3d at 1200 (citations omitted).

Based on Plaintiff's allegations, Plaintiff is suing Defendant Wilson in his supervisory capacity as Director of Corrections for the City of Denver. [*See, e.g.,* Doc. # 1, ¶ 9].  Plaintiff supports her claim against Defendant Wilson by alleging that Defendant Wilson: (1) was responsible for Defendant Lincoln's training and supervision (Doc. # 20-1, ¶ 27); (2) "inadequately trained or supervised his staff regarding the giving of razor blades to suicidal

inmates" (*Id.* at ¶ 29); and (3) that "[t]he fact that [Defendant] Lincoln gave plaintiff a razor

blade is *ipso facto* proof that she was inadequately trained and/or supervised by Defendant

Wilson regarding how to deal with inmates who are clearly labeled as suicide risks" (*Id.* at ¶ 28).

While Plaintiff's allegations are sufficient to establish that Defendant Wilson was in a

supervisory role related to Defendant Lincoln, Plaintiff alleges in conclusory fashion only

Defendant Wilson's inadequate training of Defendant Lincoln. [*See* Doc. # 20-1, ¶ 36 (Plaintiff's

proposed Second Amended Complaint in which Plaintiff provides: "Defendant Wilson's failure

to train and supervise Defendant Lincoln resulted in the deprivation of Plaintiff's rights")].

Plaintiff also fails to allege the continued existence or non-existence of any kind of policy related

to Defendant Wilson.  *See Dodds,* 614 F.3d at 1200.  Plaintiff does not adequately allege that

Defendant Wilson acted with the requisite state of mind to establish the alleged constitutional

harm nor does she contend that Defendant Wilson had any personal awareness of her condition.

*See e.g., Quitana v. Doe*, No. 09-00946, 2010 WL 2650052, at *7 (D. Colo., June 30, 2010)

(explaining that simple awareness of a prisoner's health concerns does not constitute personal

participation in the deprivation of a constitutional right). Plaintiff also fails to allege facts

supporting a finding that Defendant Wilson was personally involved in directing the allegedly

unconstitutional conduct at issue.  *See Woodward*, 977 F.2d at 1400.  Thus, it is clear that

Plaintiff has failed to sufficiently plead Defendant Wilson's personal participation in the alleged

constitutional violation

Accordingly, I find Plaintiff's individual capacity claims against Defendant Wilson

would be subject to dismissal, thus any amendment would be futile.

**3.    Official Capacity**

Plaintiff also brings suit against Defendant Wilson in his official capacity.

A suit against government officers in their official capacities is actually a suit against the governmental entity that employs the officers.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  An entity may not be held liable in a civil rights suit "simply because it employs a person who violated a plaintiff's federally protected rights."  *Jenkins v. Wood*, 81 F.3d 988, 993 (10th cir. 1996).  To establish liability of Defendant Wilson in his official capacity, Plaintiff must show:

> (1) the existence of a [governmental] custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.  If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the [entity's] inaction resulted from deliberate indifference to the rights of the plaintiff. [For instance], if the inaction theory rests on an alleged failure to train, the plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policy makers . . . can reasonably be said to have been deliberately indifferent to the need for additional training.

*Id.*  at 993-94 (citations and quotations omitted).  The need for more supervision must also be obvious and likely to result in a constitutional violation.  *See Brown v. Gray*, 227 F.3d 1278, 1291-92 (10th Cir. 2000).  A plaintiff does not carry her burden by showing "general deficiencies" but rather must "identify a specific deficiency that was obvious and closely related to [her] injury . . . so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro*, 624 F.3d at 1328 (citations and internal punctuation omitted).

Again, Plaintiff alleges in conclusory fashion only, a failure to train. [*See* Doc. # 20-1, ¶ 36 ("Defendant Wilson's failure to train and supervise . . . resulted in this violation")].  This allegation is wholly absent in the First Amended Complaint.  The United States Supreme Court

has held that a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy, for purposes of § 1983, in "limited circumstances." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). However, "[a government entity's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citations omitted). Thus, to meet the requirements of § 1983 , a government entity's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S.Ct. at 1360.

Here, Plaintiff fails to meet this standard. She does not allege any specific action by Defendant Wilson related to failure to train. She does not allege any applicable training or lack of training. Additionally, because a single incident forms the basis of Plaintiff's claim, she "must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997) (*quoting Jenkins*, 81 F.3d at 994). Plaintiff's allegations do not show that Defendant Wilson engaged in any illegal course of action or any decision by Defendant Wilson related to Plaintiff's claims.

Thus, I find that Plaintiff's official capacity claims against Defendant Wilson in the First Amended Complaint are subject to dismissal, and any amendment by the proposed Second Amended Complaint would be futile.

Accordingly, I deny Plaintiff's Opposed Motion to Amend her first amended complaint

13

and dismiss Plaintiff's claims with regard to Defendant Wilson.

**B.     Defendant Dana Lincoln**

Defendants argue that Plaintiff's claims against Defendant Dana Lincoln ("Defendant Lincoln") in her First Amended Complaint are barred by the applicable two-year statute of limitation, that the amendments do not relate back to the date of Plaintiff's initial Complaint, and as such, should be dismissed.  [*See* Doc. # 15, pp. 3-5].

Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim under 42 U.S.C. § 1983.  *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993).  Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13-80-102(g) and (I) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake*, 997 F.2d at 750 (applying § 13-80-102 to a § 1983 claim).  The determination of when a § 1983 claim accrues is governed by federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  For purposes of the statute of limitations, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Johnson Cnty Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

Here, it is undisputed that Plaintiff's claims accrued on November 20, 2010, the date in which Plaintiff injured herself with a shaving razor while in DDC's custody.  [*See, e.g.,* Doc. # 1, ¶¶ 15-16, 19].  Thus, the statute of limitations ran on Plaintiff's claims on  November 20, 2012.  Plaintiff filed her initial Complaint on November 19, 2012, in which she first named unknown Deputy Sheriff Jane Doe as a defendant.  Ten days later, on November 30, 2012, Plaintiff filed

14

her First Amended Complaint naming Defendant Lincoln in place of unknown Defendant Jane Doe.  [Doc. # 5].

Defendants contend that the First Amended Complaint changing unknown Defendant Jane Doe to Dana Lincoln was outside the statute of limitations.  As it is uncontested that Plaintiff filed her First Amended Complaint after the statute of limitations had run, the allegations against Defendant Lincoln in Plaintiff's first amended complaint should be rejected unless they relate back to the original complaint under Fed.R.Civ.P. 15(c).

Fed. R. Civ. P. 15(c) determines whether or not a plaintiff may amend a complaint to add a defendant by relating that amended complaint back to the original one, and thereby avoiding the bar set by the statute of limitations.  "In order for an amendment adding a new party to relate back to the date of the original complaint under Rule 15(c), all the conditions set forth in Rule 15(c) must be met."  *Watson v. Unipress, Inc*., 733 F.2d 1386, 1389 (10th Cir. 1984). Application of Rule 15(c) is "a purely legal" determination.  *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004) (citation omitted).  Rule 15(c) provides:

> An amended complaint relates back to the filing of the original complaint when:
>
> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (I) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C).

In her original Complaint Plaintiff identified Jane Doe in the caption.  Plaintiff seeks to replace Jane Doe with Defendant Lincoln and argues that her failure to include such was due to mistake.  The Tenth Circuit has held that "a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule 15(c)(3)(B)." *Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004); *see also Wayne v. Jarvis*, 197 F.3d 1098, 1103-04 (11th Cir.1999) (*quoting* Advisory Committee Notes to 1991 Amendment of Rule 15(c),which indicate that the "the mistake proviso [was included] . . . in order to resolve 'the problem of a misnamed defendant' and allow a party 'to correct a formal defect such as a misnomer or misidentification.'").  The Tenth Circuit further explained that "[a] plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address," and therefore replacing unidentified officials with specifically named officials does not relate back to the original complaint, so as to avoid the relevant statute of limitations.  *Garrett*, 362 F.3d at 696-97.  Instead, substituting named defendants for unknown defendants referred to in the original complaint as John Doe (or Jane Doe) defendants amounts to adding a new party, which requires that the plaintiff meet all requirements set forth in Rule 15(c)(3).  *Garrett*, 362 F.3d at 696.

Here, Plaintiff failed to identify the unknown Jane Doe Defendant within the two-year limitations period governing her claims.  Her failure to do so was not a technical mistake as defined in Rule 15(c)(3).  The addition of Defendant Lincoln would therefore be adding a new party.  Plaintiff has failed to meet all of the Rule 15(c)(3) requirements because the change in

16

name was not the result of a mistake.  Therefore Plaintiff's claims against Defendant Lincoln are barred by the statute of limitations, and dismissal is appropriate.  *See Garrett*, 362 F.3d at 697.

Accordingly, I grant Defendants' motion to dismiss Plaintiff's claims against Defendant Lincoln.

## C.     Plaintiff's State-Created Danger Claims

Plaintiff also alleges that Defendants are liable based on the "state-created danger" (or danger creation) theory.

Generally, state actors are liable only for their own acts, and not the violent acts of third parties.  *See Liebson v. New Mexico Corrs. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).  However, there are two exceptions to this general rule:

> The first exception, known as the special relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual...."  The second exception, sometimes referred to as the "danger creation" theory, provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual."

*Id.* (*quoting DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) and *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)).  For practical purposes, the two theories differ primarily in the question of whether the victim is involuntarily in state custody at the time of the harm: if so, the Court applies the "special relationship" analysis; if not, the Court considers whether the "danger creation" theory applies.  *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916, 922-23 (10th Cir. 2012) (explaining that the state-created danger exception applies "where the State creates a dangerous situation for citizens in the free world.").

Here, Plaintiff attempts to argue that Defendants violated her right to be free from a state-

17

created danger. [*See, e.g.*, Doc. # 1, ¶¶ 32-45].  Not only does Plaintiff title her claim an alleged

violation of the Fourteenth Amendment's state-created danger doctrine, she also attempts to

allege all the required elements of a state-created danger claim.  *See Uhlrig*, 64 F.3d at 567

(providing the five required elements of a state created danger claim).  However, Plaintiff is

complaining of an allegedly dangerous condition in the place of her confinement, and as such,

the state-created danger theory is not applicable.

Accordingly, I dismiss Plaintiff's state-created danger claim.

### IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiffs' Opposed Motion to Amend Complaint **[Doc. # 20]** is DENIED; and

2. Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R.

Civ. P. 12(b)(6) **[Doc. #15]** is GRANTED.


Dated: November   13  , 2013.

BY THE COURT:


   s/Lewis T. Babcock
Lewis T. Babcock, Judge